UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH VWASHINGTONO@AOL.COM THAT IS STORED AT PREMISES CONTROLLED BY AOL, INC. | Misc. No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH  WARRANT**

I, Brian Alexander Wolf, being first duly sworn, state:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for an electronic

mail (e-mail) account ("subject e-mail account") known to have been utilized by investigative

subject Veronica Oralia Washington (Veronica Washington). The information associated with

this e-mail account is stored at the premises controlled by AOL, Inc., an Internet Service

Provider headquartered at 22000 AOL Way, Dulles, VA 20166. The item to be searched is

described in Attachment A.  This affidavit is made in support of an application for a search

warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require AOL, Inc., to

disclose to the government copies of information (including the content of communications)

further described in Section I of Attachment B. Upon receipt of the information described in

Section I of Attachment B, government-authorized persons will review that information to locate

items described in Section II of Attachment B.

2.      I have been employed as a Special Agent (SA) with the Federal Bureau of Investigation

(FBI) since September 11, 2015, conducting white collar investigations involving financial

institution fraud, wire fraud, mail fraud, money laundering, and other violations.  I am currently

1

assigned to a squad at the FBI's Washington Field Office (WFO) focused on financial institution fraud.

3.      The information contained in this affidavit has been provided to me by other agents and law enforcement officers, records received via grand jury subpoena, and public source information.  This affidavit is intended to demonstrate there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this investigation.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1344 have been committed by Veronica Washington.  There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A) and (c)(1)(A).  Specifically the Court is a "district court of the United States that has jurisdiction over the offense being investigated."  18 U.S.C.§ 2711(3)(A)(i).

## RELEVANT STATUTE

6.      *Bank Fraud*. 18, U.S.C. § 1344 provides in relevant part that, "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises" shall be guilty of a federal offense.

## SUMMARY

7.      I make this affidavit in support of one (1) application for a search warrant, in furtherance

of an investigation by the FBI, for an e-mail account used by Veronica Washington and managed

by AOL, Inc.  I seek authority to search the e-mail account listed in Attachment A for items

which constitute evidence, fruits, and instrumentalities of violations of bank fraud 18 U.S.C.

§ 1344.

8.      Based on my training, experience, and the facts set forth in this affidavit, I submit there is

probable cause to believe that there is evidence of Veronica Washington's bank fraud and her

theft of funds legally belonging SunTrust Mortgage (STM) on the subject e-mail account. As set

forth herein, I submit there is probable cause to believe that violations of 18 U.S.C. § 1344 (Bank

Fraud), have occurred and that there is probable cause to search the item described in Attachment

A for evidence of these crimes further described in Attachment B.

## BACKGROUND

9.      In or about October 2013, two fraudulent Certificates of Satisfaction were recorded with

the District of Columbia Government Recorder of Deeds for the real property located at 123 57th

Street, SE, Washington, District of Columbia (123 57th St. SE), by unknown parties acting as

SunTrust Mortgage (STM).  STM learned of the fraud when foreclosure proceedings could not

be completed due to the release of STM's liens.  The property subsequently sold in December

2013; however, the mortgages that seller Veronica Washington had obtained to purchase the

property were not paid in full, due to the fraudulent Certificates of Satisfaction that had been

recorded.  Veronica Washington received $337,105.06 in proceeds from the fraudulent resale of

the property.

## PROBABLE CAUSE

10.     Veronica Washington purchased residential real estate located at 123 57th St. SE on or

3

about February 20, 2008. To buy the property, she obtained two mortgage loans for approximately $470,000 in total from STM.  STM was and is a wholly-owned subsidiary of SunTrust Bank, whose deposits were and are insured by the Federal Deposit Insurance Corporation.

11.     By 2009, Veronica Washington had failed to maintain timely mortgage payments.  In February 2010, Veronica Washington entered into a "Home Affordable Modification" trial period plan loan program with STM in an attempt to clear the arrearages to her mortgage payments.

12.     In a Home Affordable Modification Program Hardship Affidavit, dated February 17, 2010, Veronica Washington listed her e-mail address as vwashington@aol.com.

13.     By May 2010, Veronica Washington was again behind on her mortgage payments and on May 7, 2010, a Notice of Foreclosure was filed with the D.C. Recorder of Deeds.

14.     In April 2013, STM began the process of foreclosing on the mortgage and taking possession of the property at 123 57th St. SE.

15.     On or about October 2, 2013, in the District of Columbia, two fake and fictitious "certificates of satisfaction" were filed with the D.C. Recorder of Deeds falsely representing that the STM loans on 123 57th St. SE, had already been paid off and that Veronica Washington owned the property "free and clear."  Investigation determined that the attorney, "John D. Stone," and the notary, "John Andrew Rothman," both of whom are listed on the Certificates of Satisfaction, are fictitious individuals.  Investigation further determined that the attorney address provided, 46700 Atwood Square, Sterling, Virginia, belongs to licensed realtor DBR.

16.     In or about October 2013, in the District of Columbia, Veronica Washington listed the property at 123 57th St. SE, for sale for $425,000.  At that time, Veronica Washington owed STM in excess of $540,000 in principal, interest, and escrow advances on the two mortgage

4

loans she obtained from STM in order to purchase the house in February 2008.

17.    On or about November 10, 2013, Veronica Washington agreed to sell the property at 123 57th St. SE, to BKO for $379,000.

18.    In my training and experience, I know that people often use e-mail communication to correspond with title and escrow companies regarding pending sales. In fact, in this matter, I have reviewed records showing that on November 18, 2013, Veronica Washington used vwashingtono@aol.com to exchange e-mails with the realtor who was representing her in the sale of 123 57th St. SE in order to provide him with information needed for the real estate settlement.

19.    On November 19, 2013 Veronica Washington used vwashingtono@aol.com to confirm the last four digits of her Social Security Number to the title and escrow attorney involved in the settlement of 123 57th St. SE.

20.    On or about December 11, 2013, in the District of Columbia, Veronica Washington signed settlement documents at a title and escrow company's offices, selling 123 57th St. SE, to BKO for a sales price of $379,000 and certifying that she owned the property free and clear of any mortgage. When asked during the settlement how she could sell the property for less money than she purchased it, Veronica Washington replied (falsely) that she had purchased the property with cash, and not borrowed money. The title and escrow company's offices are located at 1150 Connecticut Avenue, NW, Suite 201, Washington, DC 20036.

21.    On or about December 12, 2013, Veronica Washington received sale proceeds from the subject real property in the amount of $337,105.06, wired from the title and escrow company to Veronica Washington's Navy Federal Credit Union (Navy FCU) account number 3013598739. This account had a balance of $195.60 immediately prior to the wire deposit and a balance of $337,300.66 after the deposit.

22.     On or about December 16, 2013, approximately $170,000 of the sale proceeds was

converted to a cashier's check made payable to DJ; this check was deposited into an account

owned by DJ.  We learned that the address used on the fake certificates of satisfaction belongs to

DBR, a co-worker of DJ, who is a licensed realtor (and we have confirmed with the co-worker

that she is acquainted with DJ).

23.     Veronica Washington opened Northwest Federal Credit Union (Northwest FCU) account

number 0022100051 on or about December 28, 2013, stating that she is the sibling of DJ

(according to DJ, however, they are friends but not related). Veronica Washington listed

vwashingtono@aol.com as her e-mail address on her Northwest FCU membership application.

The opening deposit for Northwest FCU account 0022100051 consisted of a Navy FCU cashier's

check in the amount of $30,000 that was drawn on Navy FCU account number 3013598739.

24.     On January 2, 2014, an e-mail was sent to Veronica Washington at address

vwashingtono@aol.com from dcdmv.driverlicense@dc.gov confirming Veronica Washington's

change of address from 123 57th St. SE to 390 Taylor St. NE in Washington, D.C.

### BACKGROUND CONCERNING E-MAIL

25.     In my training and experience, I have learned that AOL, Inc. provides a variety of on-line

services, including e-mail access, to the public.  AOL, Inc., allows subscribers to create an e-mail

address, such as vwashingtono@aol.com, and to send and receive e-mails from that account.

Therefore, the computers of AOL, Inc., are likely to contain stored electronic communications

(including retrieved and unretrieved e-mails for AOL, Inc., subscribers) and information

concerning subscribers and their use of AOL, Inc., services, such as account access information,

e-mail transaction information, and account application information.  In my training and

experience, such information may constitute evidence of the crimes under investigation because

the information can be used to identify the account's user or users.

6

26.     An AOL, Inc., subscriber can also store, on servers maintained and/or owned by AOL, Inc., files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mails in the account, and attachments to e-mails, including pictures and files.

27.     In my training and experience, e-mail providers like AOL, Inc., generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often nevertheless provides clues to their identity, location, or illicit activities.

28.     In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, length of service, records of log-in (i.e., session) times and durations, types of service utilized, status of the account (including whether the account is inactive or closed), methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information

can help to identify which computers or other devices were used to access the e-mail account.

29.     In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

30.     As explained herein, information stored in connection with an e-mail account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each offense-element, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with an e-mail account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the e-mail provider can show how and when the account was accessed or used. For example, e-mail providers typically log the IP addresses from which users access the e-mail account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the e-mail account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or

8

exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via e-mail).  Finally, stored electronic data may provide relevant insight into the e-mail account owner's state of mind as it relates to the offense under investigation.  For example, information in the e-mail account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

CONCLUSION

Based on the forgoing, I submit that this affidavit supports probable cause for a warrant to search items described in Attachment A to seize the items described in Attachment B. Because the warrant will be served on AOL, Inc. who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Brian Alexander Wolf, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on December _____, 2015

_____
The Honorable G. Michael Harvey
UNITED STATES MAGISTRATE JUDGE